256 A.2d 20.

ALFRED J. BISHOP *vs.* HAROLD V. LANGLOIS, *Warden.*

JULY 16, 1969.

PRESENT: Roberts, C. J., Powers, Joslin and Kelleher, JJ.

Roberts, C. J. This petition for habeas corpus was brought to obtain the discharge of the petitioner from the allegedly unlawful custody of the respondent warden. The petitioner has been in the respondent's custody since March 11, 1968, at which time a justice of the superior court sentenced the petitioner to a term of five years for violation of a deferred sentence.

Alfred J. Bishop, hereinafter referred to as petitioner, on June 13, 1963, pleaded nolo contendere to indictment No. 2106, charging him with breaking and entering, and on June 28, 1963, was sentenced to a term of one year at the

adult correctional institutions. The record discloses that petitioner served this sentence. Subsequently, on October 7, 1965, petitioner pleaded nolo contendere to indictment No. 2457, charging him with the possession of a firearm after conviction of a crime of violence, and on October 21, 1965, sentence was deferred on that plea. Indictment No. 2457 charged petitioner with a violation of G. L. 1956, §11-47-5, as amended[1], which makes it an offense for anyone who has been convicted of a crime of violence to be in possession of a firearm thereafter.

On December 4, 1967, petitioner was again indicted for breaking and entering, the indictment No. 2888 still pending in the superior court. On March 11, 1968, he was found to have violated the terms of the deferred sentence and was sentenced to the term of five years he is now serving. On September 18, 1968, a hearing was held on petitioner's petition for a writ of error coram nobis, in which he sought to establish that in 1963, when he pleaded nolo to indictment No. 2106 and was sentenced to one year, he had not been informed by either the court or his counsel of the nature and the consequences of a plea of nolo. At that time counsel who had represented him in 1963 stated by way of deposition that he had not informed petitioner of the nature and consequences of the plea of nolo. The superior court found that petitioner did not in 1963, with respect to indictment No. 2106, make a knowing and understandingly clear waiver of his right to a jury trial. However, for other reasons, the court denied and dismissed the petition.

The petitioner is contending, as we understand him, that it was prejudicial error on the part of the court to have

---

[1] In 1965 §11-47-5, as amended, read as follows: "No person who has been convicted in this state or elsewhere of a crime of violence or who is a fugitive from justice shall purchase, own, carry, transport or have in his possession or under his control any firearm."

accepted in 1963 his plea of nolo contendere without first ascertaining that he was fully aware that such a plea was equivalent to a plea of guilty and that by the entry thereof petitioner was deprived of a number of constitutional rights, including that of trial by jury. He argues that, in the circumstances, the 1963 conviction pursuant to indictment No. 2106 was null and void and should be set aside, and further that he should be released from custody resulting from his 1965 conviction pursuant to indictment No. 2457. This argument rests, we assume, on the theory that if the conviction of 1963 were null and void, he could not have been convicted under §11-47-5 for the possession of a firearm after conviction for a crime of violence.

In this argument petitioner relies upon the principle of law referred to by this court in *Lonardo* v. *Langlois,* 98 R. I. 493, 205 A.2d 19, and adopted by us some months later in *Cole* v. *Langlois,* 99 R. I. 138, 206 A.2d 216. In *Cole* we held that an accused is entitled as of right to be fully informed of the nature of the accusation against him and, therefore, to be fully apprised of the nature of the plea of guilty and the effect of such a plea on his constitutional rights. In many jurisdictions the obligation to thus inform an accused is imposed upon the court by rule or by statute. However, even where such an obligation is not imposed expressly upon the court, such a plea will be vacated when it is shown to have been obtained from a defendant who was unaware and uninformed as to its nature and as to its effect as a waiver of his constitutional rights. See *Kercheval* v. *United States,* 274 U. S. 220, 47 S. Ct. 582, 71 L.Ed. 1009.

*Cole,* however, establishes as the rule in this state that the obligation of the court in these circumstances is "* * * to ascertain whether petitioner knew of the effect of the plea and to inform him with respect thereto if he did not." 99 R. I. at 145, 206 A.2d at 220. We further held that

failure on the part of the court might be held to be harmless error where the accused, through the advice of counsel, had been sufficiently informed as to the plea and its consequences to establish that the waiver of his pertinent constitutional rights was intelligent and voluntary.

In this court petitioner is seeking to have the decision of the superior court dismissing his petition for writ of error coram nobis set aside and the conviction of 1963 declared null and void. This he rests upon the fact that the record does not disclose that the court either ascertained the state of his knowledge concerning the nature of the plea or that it had informed him thereof, and that the deposition of his former attorney, stating that he had failed to inform petitioner of the nature and results of a plea of nolo contendere, warrants a vacation of the entry of that plea.

In this case the question is raised for the first time whether the rule stated in *Cole* should be given a retrospective application. This contention confronts us with the question whether this court may, in consistence with the ends of justice, give the rule stated in *Cole* a prospective application only, that is, to pleas that were entered after the date of that decision, January 13, 1965. It is true that in the decision in *Cole* we applied the principle of law stated therein to a plea of nolo contendere entered on February 28, 1964, or almost a year prior to the filing of that decision.

We turn to consider then in the first instance whether inequities would result from the granting of such relief to Cole, the first person to raise the question, but denying it to others whose pleas, like Cole's, were entered before the date of that decision. It has been pointed out that it is proper to give the first applicant for such relief the benefit of the revised rule, and this is consistent with the obligation of the courts to resolve issues only in concrete controversies and to provide counsel with an incentive to

advance contentions requiring a change in the law. *Castro v. United States,* 396 F.2d 345, 349; *Stovall* v. *Denno,* 388 U. S. 293, 300, 301, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199, 1205, 1206. We concur in the view thus taken by the United States courts as stated in the above-cited opinions. The fact that the first applicant to raise the particular issue receives benefits therefrom does not have the effect of precluding the court from giving the rule so stated only prospective operation. The apparent inequities arising out of the fixing of such a cutoff date are outbalanced by the factor of public reliance on an effective administration of justice, which argues for a prospective application only. See *Stovall* v. *Denno, supra.*

Whether a particular rule of criminal procedure should be given retrospective application raises a vexing question, the answer to which must depend upon a consideration of a number of factors. The interests of the accused must be given full and adequate consideration, but at the same time those interests must be weighed against the public's interest in the effective enforcement of the criminal law. Obviously, where the mandate of the public interest is superior to the interests of the accused, retrospective application cannot be justified.

In *Linkletter* v. *Walker,* 381 U. S. 618, 629, 85 S.Ct. 1731, 1738, 14 L.Ed.2d 601, 608, the United States Supreme Court said: "Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must then weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." There is nothing in our constitution which either mandates or precludes the application of a rule of retrospectivity and, therefore, as noted in *Linkletter,* we must look to the merits and the demerits of the proposition that has

been put before us. We must determine whether the interests of the accused so counterbalance the interests of the public in the enforcement of the criminal law that retrospective application of the particular rule of criminal procedure is warranted.

An examination of the cases discloses that the courts have repeatedly attempted to promulgate standards or criteria upon which to base these considerations. In *Stovall* v. *Denno, supra,* the Supreme Court of the United States said: "The criteria guiding resolution of the question implicate (a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 388 U. S. at 297, 87 S.Ct. at 1970, 18 L.Ed.2d at 1203.

In *State* v. *Gannites,* 101 R. I. 216, 221 A.2d 620, we concluded that the rule laid down in *Escobedo* v. *Illinois,* 378 U. S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and *Miranda* v. *Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, was to be given prospective application only. In *Gannites* we noted that the United States Supreme Court refused to give retrospective application to the rule thus laid down in either *Escobedo* or *Miranda.* There we said that, as regards the United States Supreme Court, "Influenced obviously by the considerations but recently expressed in *Linkletter* v. *Walker,* 381 U. S. 618, which go to the 'administration of justice and the integrity of the judicial process' the majority refused retrospective application to *Escobedo* or *Miranda.*" 101 R. I. at 220, 221 A.2d at 622. In our opinion, these same considerations must control our decision here, and we hold that the rule laid down in *Cole* is to operate prospectively only and shall be applied only to cases in which the plea was entered subsequent to January 13, 1965, the date of our decision in *Cole, supra.*

In our opinion, to hold that the rule stated in *Cole* would have retrospective application to pleas of nolo contendere or guilty entered prior to that decision would wreak havoc in the administration of justice. Obviously, in most cases in which relief was sought the record would not disclose that any particular information concerning the nature of such pleas had been given the claimant and, therefore, it would be impossible to ascertain therefrom that the claimant had made an intelligent, voluntary waiver of his constitutional rights when he entered such plea.

It is a matter of common knowledge that until our decision in *Cole* was announced, defendants were rarely informed by the court or, for that matter, by counsel, of the effect upon their constitutional rights of the plea of nolo contendere or guilty. The records disclose that usually the only information given was as to the availability of the plea of nolo contendere as a means of obtaining either the deferral of sentence or some moderation thereof. In short, in our courts the plea of nolo contendere was part of a bargaining process to which defendants resorted to obtain leniency with respect to penalties, and generally no effort was made to inform them that the entry of such a plea could be construed to constitute a waiver of their constitutional rights.

There can be no doubt that some defendants pleaded nolo contendere without considering whether in the factual circumstances they could be found guilty of the crime with which they were charged. What they sought and usually obtained was some moderation of the penalties that the court could impose were they to have been found guilty after a trial. What is important to note is that the improper procedure was usually based upon a tacit admission of guilt by way of a plea for leniency in the imposition of penalty. In no manner did this practice strike at the integrity of the guilt-finding process.

We have no doubt that prior to our decision in *Cole* the acceptance of pleas of guilty, and particularly pleas of nolo contendere, with the expected deferral or moderation of penalty, were relied on by the courts and defendants to expeditiously and fairly dispose of criminal litigation. To now authorize such defendants to challenge the voluntariness of their pleas would have a devastating impact upon the administration of justice. This could result only in the necessity for repleading and retrying substantial numbers of defendants whose conviction pursuant to the plea entered was in accordance with the procedure accepted as valid at the time that it was invoked.

While we decline to apply *Cole* retrospectively, it is our opinion that the trial courts of this state must in the future, when accepting a plea of guilty or nolo contendere, cause the record to show affirmatively that the defendant, in entering the plea, did so intelligently and voluntarily or, in other words, that the entry of the plea constituted a voluntary and intentional waiver of the pertinent constitutional rights. In *Boykin* v. *Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 274, the Supreme Court held, in effect, that where the federal guarantees to a jury trial are concerned, the states, in accepting a plea of guilty, must follow a procedure akin to that provided in Rule 11 of the Federal Rules of Criminal Procedure.[2] This rule requires that the court address itself to the defendant prior to accepting such a plea

---

[2]Rule 11 of the Federal Rules of Criminal Procedure, as amended July 1, 1966, reads: "A defendant may plead not guilty, guilty or, with the consent of the court, *nolo contendere.* The court may refuse to accept a plea of guilty, and shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea. If a defendant refuses to plead or if the court refuses to accept a plea of guilty or if a defendant corporation fails to appear, the court shall enter a plea of not guilty. The court shall not enter a judgment upon a plea of guilty unless it is satisfied that there is a factual basis for the plea."

in order to ascertain his understanding of the criminal charges brought against him and his awareness of the consequences of the plea.

In *McCarthy* v. *United States,* 394 U. S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418, the United States Supreme Court made it clear that the federal district courts must secure to defendants offering to plead guilty their constitutional rights to the privilege against self-incrimination, right to a jury trial, and the right to confront their accusers. In so doing, these courts are required to comply fully with the provisions of Rule 11 and to make the record show affirmatively that the plea was entered voluntarily and intelligently. In *Boykin* v. *Alabama, supra,* the Supreme Court of the United States, at least by implication, makes the procedure set out in Rule 11 applicable to the states through the fourteenth amendment when federal constitutional rights are involved in the entry of the plea. In *McCarthy* the court said that the rule "* * * is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary. Second, the Rule is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination. Thus, the more meticulously the Rule is adhered to, the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas." 394 U.S. at 465, 89 S.Ct. at 1170, 22 L.Ed.2d at 424.

There is no doubt that the question of an effective waiver of a federal constitutional right in any proceeding is one governed by federal standards. *Douglas* v. *Alabama,* 380 U. S. 415, 422, 85 S.Ct. 1074, 1078, 13 L.Ed.2d 934, 939. As the court pointed out in *McCarthy* v. *United States, supra,* at least three federal constitutional provisions are involved in the entry of the plea of guilty, that against self-incrimi-

nation guaranteed by the fifth amendment, the right of trial by jury, and the right to confront one's accusers. We agree with the court's conclusion and that a waiver of these important federal rights cannot be presumed from a silent record.[3]

In *McCarthy* the United States Supreme Court noted that there was a difference of opinion among the circuits as to what relief should be granted a petitioner whose plea of guilty or nolo contendere was accepted without full compliance with the provisions of Rule 11 and concluded that the better rule was that adopted by the Court of Appeals for the Ninth Circuit, holding that the defendant's guilty plea must be set aside and his case remanded for another hearing at which he may plead anew. We concur in the view of the Supreme Court on these premises.

It follows, then, that in accepting the plea of guilty or nolo contendere after the date of this decision, the trial justice "* * * shall not accept such plea or a plea of *nolo contendere* without first addressing the defendant personally and determining that the plea is made voluntarily with

---

[3]In *Halliday* v. *United States*, 394 U. S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, the court in a per curiam opinion declined to give retroactive application to the *McCarthy* holding requiring district courts, in accepting pleas of guilty, to give full compliance to the provisions of Rule 11 of the Federal Rules of Criminal Procedure, as amended. The court went on to say that a defendant whose plea had been accepted without full compliance with Rule 11 "* * * may still resort to appropriate post-conviction remedies to attack his plea's voluntariness. Thus, if his plea was accepted prior to our decision in *McCarthy*, he is not without a remedy to correct constitutional defects in his conviction." At first blush the court in *Halliday* appears to be inconsistent by denying retroactive application to the *McCarthy* rule requiring full compliance with Rule 11 and at the same time saying that a defendant may at any time, by way of a postconviction proceeding, attack the voluntariness of his plea. However, this apparent inconsistency may be resolved if we construe the court's use of the term "voluntariness" in *Halliday* as limited to postconviction review of pleas entered by way of duress, coercion, or fraud rather than as encompassing the full panoply of rights granted to a defendant under Rule 11.

understanding of the nature of the charge and the consequences of the plea." Such trial justice shall further cause the record to show affirmatively that such inquiry was made and that the accused did by his responses thereto demonstrate clearly that he was aware of the nature of the charge to which he pleaded and that he was aware that such a plea constitutes a waiver of his pertinent constitutional rights. Absent such an affirmative disclosure in the record of compliance with this mandate, the trial court, upon an appropriate petition, shall vacate the plea entered and order that the accused be permitted to plead over in proper course.

The petition for habeas corpus is denied and dismissed, and the writ heretofore issued is quashed.

Motion for reargument denied.

PAOLINO, J., did not participate.

*John A. Varone,* for petitioner.

*Herbert F. DeSimone,* Attorney General, *Donald P. Ryan,* Assistant Attorney General, for respondent.