**In re JOHN D.**

No. 83–156–Appeal.

Supreme Court of Rhode Island.

July 5, 1984.

Dennis J. Roberts II, Atty. Gen., John J. McMahon, Sp. Asst. Atty. Gen., for petitioner.

William F. Reilly, Public Defender, Barbara Hurst, Chief, Appellate Div., Paula Rosin, Asst. Public Defenders, for respondent.

## OPINION

WEISBERGER, Justice.

This matter comes before us on appeal from an adjudication of delinquency entered in the Family Court. The acts underlying the finding of John's delinquency were assault with a dangerous weapon in violation of G.L. 1956 (1981 Reenactment) § 11–5–2, as amended by P.L. 1981, ch. 76, § 1 and a robbery in violation of § 11–39–1. The facts pertinent to this appeal are as follows.

Fifteen-year-old John (sometimes referred to as respondent) was arrested by the North Providence police on February 12, 1982. On February 15, 1982, after being detained at the Rhode Island Training School over the weekend, John appeared before a justice of the Family Court and was served with two petitions containing details of the foregoing charges. At the arraignment proceeding, John was accompanied by his mother. The judge advised both the boy and his mother that he had a right to be represented by an attorney and that if they were unable to afford an attorney, a public defender could be assigned to represent him. In response to the judge's inquiry about whether counsel was desired, John replied, "No. Going to plead guilty." The following colloquy then ensued:

"THE COURT: You have a right to plead guilty. If you plead guilty, I will make a finding that you are delinquent and I will commit you to the Rhode Island Training School until further order of the Court based upon the charges themselves and a quick look at your prior record. You have a right to plead guilty; when you plead guilty, you give up any right that you have, to have a trial before a judge. On that trial the North Providence Police would have to prove the case beyond all reasonable doubt; you would have a right to have them present witnesses and you could cross-examine those witnesses and present any witnesses you wanted in your own defense. If you plead guilty you give up your right to an appeal by submitting to this case here, except an appeal on the question of whether you entered a valid guilty plea; but as to the issues, you have given up any right because there is no record. Do you understand?

"JOHN: Yes. Can I just read these over before I make up my mind?

"* * *

"THE COURT: If you'd like to speak to a public defender before you enter your guilty plea, I will give you a chance to speak to him. If you don't qualify for his services he won't represent you at the trial itself but he can advise you right now.

"JOHN: No. I'll just plead guilty.

"THE COURT: You want to plead guilty?

"JOHN: Plead guilty.

"THE COURT: [Mother], are you satisfied that he knows what he is doing and says what he wants to say?

"[MOTHER]: Yes, Your Honor, because I feel he's—this is not the first time and he realizes the consequences."

The court then made the following findings:

"On both Petitions, the Court finds that this young man has made a knowing, intelligent, understanding waiver of all of his rights after consultation with his mother, who agrees to his waiving. He declined the services of the public defender. He admits his guilt in two offenses * * *. The Court is satisfied from the questions and answers given by this young man, that, in fact, that he committed these offenses knowingly and with the intent to perpetrate the crime of robbery and assault with a dangerous weapon. He is found to be delinquent on both offenses. And he's ordered committed to the care, custody, control of the Superintendent of the Rhode Island Training School for Boys until he is twenty-one years old."

Subsequent to the uncounseled admissions and the commitment to the Rhode Island Training School, John contacted the Family Court judge several times by letter, indicating his desire to withdraw his admissions of guilt. On May 26, 1982, the judge referred the matter to the Office of the Public Defender.

On June 16, 1982, the public defender filed a motion on John's behalf to vacate the plea that had been accepted on February 15, 1982. The motion came before the court on July 13, 1982, at which time the matter was referred to the judge who had accepted the plea, with further directions that the parties file memoranda of law and affidavits. John's affidavit asserted that he was not aware of the presumption of innocence, his privilege against self-incrimination, his right to testify in his own defense at trial, the nature of the charges made against him, and the maximum sentence that could be imposed at the time his plea was taken. It also asserted that had he been informed of these elements, he would not have pleaded guilty. John further stated that he did not discuss any of the recited rights with his mother, either in court or elsewhere, and that he entered guilty pleas to the petitions without a full understanding of the consequences of those pleas. A second affidavit filed by John's mother reiterated the statement that at no time did she discuss with her son any of the rights recited by the judge or the nature of the allegations against John. Satisfied that the present order would best serve to rehabilitate John, the trial justice, upon a review of the record, denied the motion to vacate the adjudication based upon the challenged admissions and remanded John to the Rhode Island Training School.

The issue on appeal addresses the constitutionality of respondent's "plea" under the circumstances. The respondent contends that his admission of guilt of two crimes, which if committed by an adult would have constituted serious felonies, made without advice of counsel, without being advised of all the rights he was relinquishing by virtue of "pleading guilty," and without being advised of the maximum sentence, fails to meet constitutional requirements and therefore should be vacated. To determine whether the admission was valid, we shall address the various contentions of error about the "plea" as they have been raised by respondent.

■ It should be noted at the outset of this opinion that John, although a juvenile,

purported to "plead guilty" to the charges. These admissions supported a finding of sufficient facts warranting an adjudication of delinquency. A finding of delinquency or waywardness in a juvenile proceeding is not the equivalent of a finding that the juvenile has committed a crime. Rather, a determination of delinquency is warranted when an act is committed that would amount to a felony if it had been committed by an adult. General Laws 1956 (1981 Reenactment) § 14–1–3(F). However, since such person is a minor requiring the type of care, guidance and control that will serve both the child's welfare and best interests of the state, disposition therefore in accordance with § 14–1–2 is required.[1] *See In re Michael,* R.I., 423 A.2d 1180, 1183 (1981). It is the practice of the Family Court to refrain from using terminology such as "guilty" or "nolo contendere" in order to identify the proceeding as one of civil, as opposed to one of criminal, nature. Thus, John's use of the plea of "guilty," although technically improper, is tantamount to an admission of sufficient facts to warrant a finding of delinquency by the court.

The first issue on appeal regards the standards that should govern a juvenile's plea proceeding. Since the decision of the Supreme Court in *In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967), significant emphasis has been placed upon clarification of the rights to which juveniles should be entitled during judicial proceedings. In *Gault* the Court enunciated the principle that a hearing concerning an adjudication of delinquency in juvenile court should be governed by the basic procedural safeguards required by the due-process clause of the Fourteenth Amendment to the Federal Constitution. *Id.* at 30–31, 87

S.Ct. at 1445, 18 L.Ed.2d at 547. A further explication of the scope of *Gault* was set forth in *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). In that case the Supreme Court recognized that the standard of proof beyond a reasonable doubt was also a constitutionally mandated safeguard to be applied during the adjudicatory stage of a delinquency proceeding in further implementation of those constitutional rights required by *Gault.* These rights had included the notice of charges, the right to counsel, the rights of confrontation and cross-examination, and the privilege against self-incrimination. *Id.* at 368, 90 S.Ct. at 1075, 25 L.Ed.2d at 377–78. Our court adopted the guidelines enunciated in *In re Gault* in the case of *Gonsalves v. Devine,* 110 R.I. 515, 294 A.2d 206 (1972), which recognized the requirement that a juvenile proceeding be governed by "the essentials of due process and fair treatment," one such essential being the privilege against self-incrimination. 110 R.I. at 520–21, 294 A.2d at 209 (quoting *In re Gault* at 387 U.S. at 30, 87 S.Ct. at 1445, 18 L.Ed.2d at 548).

■ In juvenile court, civil labels and good intentions alone fail to obviate the need for criminal due-process safeguards in situations in which the proceedings entail a potential finding of delinquency, the consequences of which might well be the loss of the minor's liberty comparable in seriousness to the results of a felony prosecution if the minor were tried as an adult. *In re Winship,* 397 U.S. at 365–66, 90 S.Ct. at 1073, 25 L.Ed.2d at 376. As the Court in *Winship* concluded, the observance of the essential due-process safeguards applied in *Gault* and the standard of proof beyond a reasonable doubt will not bring about an

---

**1.** General Laws 1956 (1981 Reenactment) § 14–1–2 reads as follows:

"The purpose of this chapter is to secure for each child under its jurisdiction such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the state; to conserve and strengthen the child's family ties wherever possible, removing him from the custody of

his parents only when his welfare or the safety and protection of the public cannot be adequately safeguarded without such removal; and, when such child is removed from his own family, to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his parents."

abandonment or displacement of any substantive benefits that are inherent in the juvenile process. *Id.* at 367, 90 S.Ct. at 1074, 25 L.Ed.2d at 377. It is our task, then, as suggested by the United States Supreme Court, in "accepting 'the proposition that the Due Process Clause has a role to play' * * * 'to ascertain the precise impact of the due process requirement.'" *McKeiver v. Pennsylvania,* 403 U.S. 528, 541, 91 S.Ct. 1976, 1984, 29 L.Ed.2d 647, 659 (1971) (quoting *In re Gault,* 387 U.S. at 13–14, 87 S.Ct. at 1436, 18 L.Ed.2d at 538). As we noted in *In re Michael, supra,* an important aspect of a juvenile proceeding is the nature of the rights given to a juvenile who has been charged with delinquency. 423 A.2d at 1183. However, in the instant case the real issue presented is whether the due-process safeguards surrounding a plea of guilty in an adult proceeding should also be required in the context of an admission to sufficient facts to warrant a delinquency finding in a juvenile proceeding.

 The plea of guilty according to *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), is tantamount to a conviction after trial since it is more than an admission of conduct; it is a conviction in its own right. *Id.* at 242, 89 S.Ct. at 1711–12, 23 L.Ed.2d at 279. Inasmuch as juvenile adjudication proceedings necessitate the application of procedural due process similar to that required in adult criminal trials, parallel safeguards should be applied in the area of juvenile "plea" proceedings which also amount to a final disposition of the charge of delinquency. Regardless of the procedure, the juvenile in both an adjudicative and a plea proceeding faces a curtailment of freedom and possible commitment to a state institution. Thus, despite the non-criminal terms utilized in juvenile court, the determination of delinquency often results in a deprivation of liberty that should only be allowed to stand if all the constitutional requirements of

*Boykin, supra,* insofar as relevant to juvenile proceedings, are strictly applied.

 The privilege against compulsory self-incrimination guaranteed by the Fifth Amendment, the right to trial by jury, and the right to confront one's accusers are all involved in the waiver that results from a plea of guilty in an adult state criminal trial. *Boykin v. Alabama,* 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279. For a guilty plea to be valid, it must be affirmatively shown that it was both intelligently and voluntarily given, and made with a full understanding both of what the plea connotes and of its possible consequences. *Id.* at 242–44, 89 S.Ct. at 1712, 23 L.Ed.2d at 279–80. We adopted this rule in *Bishop v. Langlois,* 106 R.I. 56, 256 A.2d 20 (1969), requiring that the trial justice personally address the defendant to ascertain the voluntariness of a plea of guilty or nolo contendere to determine whether a defendant has made a plea with full understanding of the nature of the charge and the legal consequences of entering such a plea. *Id.* at 64, 256 A.2d at 25.

 In the instant proceeding, respondent alleges that his plea should be vacated on the grounds that the judge failed to inform him of his privilege against self-incrimination, his presumption of innocence, his right to testify at trial, the nature of the charges against him, and his right of allocution respecting his sentencing. We recognized in *State v. Feng,* R.I., 421 A.2d 1258, 1267 (1980), and in *State v. Williams,* R.I., 404 A.2d 814, 818–19 (1979), that certain elements should be discussed in any colloquy between the court and a defendant before a defendant will be deemed to have voluntarily waived his rights by entering a plea of guilty. The principles enunciated in *Gault* and *Winship,* both *supra,* suggest that the juvenile should be entitled at the very least to the same constitutional protections that are bestowed upon an adult.[2]

**2.** Numerous courts have ruled the mandates of *Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), applicable to juvenile

court proceedings where the minor is subject to institutional detention. *See, e.g., In re Michael M.,* 11 Cal.App.3d 741, 96 Cal.Rptr. 887 (1970);

The essential elements that should be required to ensure an informed waiver of the juvenile's rights would include that he be informed of the nature of the charges, the maximum sentence that may be imposed, the benefit of the presumption of innocence, the privilege against self-incrimination, the right to confront and cross-examine his accusers and the witnesses against him, the right to testify and to call witnesses in his own defense, the right to have the state prove the juvenile's guilt beyond a reasonable doubt prior to any finding of delinquency, and the right to appeal any delinquency finding to this court. *See, e.g., Boykin v. Alabama,* 395 U.S. at 243, 89 S.Ct. at 1712, 23 L.Ed.2d at 279; *State v. Feng,* 421 A.2d at 1267–69; *Bishop v. Langlois,* 106 R.I. at 66–67, 256 A.2d at 27. Although not exhaustive of the safeguards to be included in the admonitions to be given the juvenile in a delinquency proceeding, these are the essential rights of which the accused should be informed by the court prior to the acceptance of an admission of delinquency from that individual. From the record in the instant case, the colloquy between the judge and John appears to fall short of informing John of all the necessary elements underlying a knowing and intelligent waiver.

 We do not suggest that the enunciation of a litany of constitutional rights may in the juvenile context be adequate in and of itself. The court should in substance set forth in language understandable to the juvenile the essential elements underlying certain rights. No particular magic formula or incantation need be used other than, in effect, an explanation sufficient to explain to the juvenile those rights which he or she has and those rights that will be waived by admitting to delinquency.

In the case at bar, the trial justice did not include in his admonitions the following: (1) the maximum penalty that might be imposed for the offense, (2) the right of the juvenile to testify in his own behalf, and (3) the right of the juvenile to choose not to testify or aid the prosecution in any way, in implementation of his privilege against self-incrimination.

 In all other respects we believe that the admonitions given by the trial justice were reasonably adequate to convey in understandable language the rights that the juvenile would give up by his admission. We should also point out that exceptional efforts must be made in order to be certain that an uncounseled juvenile fully understands the nature and consequences of his admission of delinquency. We are constrained to observe that allowing uncounseled juveniles to admit to acts of delinquency which would constitute a felony if committed by an adult should be done only under the most extraordinary circumstances.[3] If juveniles are unable to afford counsel, a public defender will normally be available to advise the person (as the trial justice suggested in this case). The waiver of counsel under these circumstances should not routinely be allowed. If it is allowed, as it was in this case, we must scrutinize the admonitions given by the trial justice to the juvenile and his parent, if present, with the utmost exactitude and care to be certain that they meet the requirements for adults that have been laid down by this court and by the Supreme Court of the United States. We are constrained to hold that the colloquy in the case at bar did not meet these exacting standards in three significant areas of required admonitions.

*In re Chatman,* 36 Ill.App.3d 227, 343 N.E.2d 569 (1976); *State ex. rel. Juvenile Department of Coos County v. Welch,* 12 Or.App. 400, 507 P.2d 401 (1973).

**3.** A finding of delinquency may have significant collateral effects upon a juvenile even though a finding of delinquency is not a criminal conviction. Pursuant to the provisions of § 14–1–7.1, a juvenile, sixteen years old or older, who has been found delinquent on two occasions after the age of sixteen for acts that if committed by an adult would constitute a felony, may on the third occasion be subject to waiver from the jurisdiction of the Family Court and then be tried as an adult.

In view of our determination in respect to the inadequacy of the foundation for acceptance of the admission of facts essential to a finding of delinquency, it is not necessary for us to reach the question of the alleged right of allocution except to say that we reaffirm the general principles enunciated in *In re Wilkinson*, 116 R.I. 163, 353 A.2d 199 (1976).

For the reasons stated, the respondent's appeal is sustained. The finding of delinquency is hereby vacated, and the papers in the case may be remanded to the Family Court for further proceedings consistent with this opinion.