DECISION
A hearing was held before the Court on September 28, 1998, on the defendant's motion for post conviction relief on the basis of a lack of competency on the part of the defendant to enter a plea in a knowing and intelligent manner by reason of continuing mental illness for which he was taking medication and while under the care of a prison psychiatrist.
 TRAVEL OF THE CASE
In 1994, Carl Thomas, the defendant, was indicted on three counts of sexual assault in the first degree, one count of kidnapping, and one count of assault upon defendant's estranged wife, Barbara Thomas. Defendant was held without bail while awaiting trial. The trial began before a jury in Kent County on June 1, 1995, and direct examination of the complaining witness was complete by the end of the session that day. On June 2, 1995, prior to the start of in-court proceedings, defendant's counsel, Jacqueline Burns, Esquire, informed the Court that the defendant wished to plead to the charges.
Against the advice of counsel, the defendant did plead to all charges; he was remanded to the ACI and held without bail to await sentencing. A presentence report was ordered and defendant was sentenced on all charges by the Court on August 31, 1995.
A motion to reduce sentence was filed and it was heard by the trial court and denied on May 24, 1996. An appeal was commenced to the Rhode Island Supreme Court and the plea and sentence was upheld by the Court in Order No. 97-618-C.A.
The motion for post conviction relief, which is the subject of this decision, was filed in January 1998. Counsel was appointed to represent the defendant, funds were authorized to conduct a psychiatric exam of the defendant, and depositions and discovery ensued. A hearing on the merits was conducted on September 28, 1998, and briefs were submitted by counsel by January 1999.
 ISSUE
The issue in this case is whether or not the defendant was mentally incompetent to render a valid and voluntary plea to the charges contained in the indictment and able to make a voluntary, knowing, and intelligent waiver of his rights at the time of his entry of the plea.
 FACTS
The facts leading up to the plea made by the defendant in this case, with the exception of the issue of his competent ability to do so, are generally not in dispute.
Ms. Jacqueline Burns was defense counsel for the defendant and served as an Assistant Public Defender in the Kent County office. Ms. Burns represented defendant throughout pretrial discovery and prepared the case for trial with the defendant.
The trial began on or about June 1, 1995 with motions, jury selection, opening statements, and the direct testimony of the complaining witness, Barbara Thomas.
On the morning of June 2, 1995, when defendant was brought into the courthouse lockup from the ACI, he asked to see his counsel and indicated to her that he wished to change his plea from not guilty to guilty.
Defendant's counsel advised the Court of her client's change of position and indicated to the Court that the contemplated plea was against her advice. The Court advised counsel that any plea would be "open ended" re: subject to any sentence deemed appropriate in accordance with the statutes, and that the defendant would be sentenced after obtaining a presentence report.
The plea was taken on June 2, 1995 by the Court and the defendant was remanded to the ACI to await sentencing. The defendant was sentenced on August 31, 1995.
 DEFENSE POSITION
The defense has argued that the defendant was a 52 year old man, born in Indiana, who, at the time of his plea in the instant case, was an 8th grade dropout with a GED certificate earned in 1986. Defendant alleges he was diagnosed with a schizo-affective disorder, a chronic mental illness comprised of symptoms of schizophrenia and depression. He was under the care of prison psychiatrist Martin Bauermeister, M.D., and James Greer, M.D., and had been following a regimen of anti-psychotic medication.
Defense cites to the defendant's medical record where in it is reported that in March and April of 1995, defendant was experiencing "overwhelming thoughts" and "racing or raging thoughts" and that during both of these months, defendant's medical dosage was increased.
An evidentiary hearing was held by the Court on September 28, 1998, at which time the defendant called two witnesses, Dr. James Greer and his trial counsel, Ms. Jacqueline Burns, Esquire.
The first witness, Dr. Greer, testified to his record of treatment and diagnosis of Mr. Thomas, and also as an expert in the field of psychiatry. Dr. Greer stated that, in his expert opinion, Mr. Thomas was unable to enter a knowing, intelligent, and voluntary plea of guilty on June 2, 1995. Dr. Greer based his opinion on the fact that Mr. Thomas had a history of "decompensation," or relapse into psychosis when he ceased taking anti-psychotic medication. Dr. Greer noted that Mr. Thomas had not taken his anti-psychotic medication for several weeks prior to his change of plea. Further, Dr. Greer was troubled that the Court was completely unaware of his mental illness and the treatment he had received for that illness. He further noted that persons suffering from delusions or delusional beliefs do not always manifest overt symptoms of the delusion.
Dr. Greer testified that it was impossible to precisely quantify the degree of Mr. Thomas's impairment, and suggested that Mr. Thomas was competent to enter a change of plea. Dr. Greer, in fact, stated that he was not able to quantify the degree of Mr. Thomas's impairment on June 2, because he did not examine him on that date. However, relying on his experiences treating Mr. Thomas between 1995 and 1997, Dr. Greer noted that every other time that Mr. Thomas went off his anti-psychotic medication, he became "delusional and psychotic."
The defendant also called his former counsel, Jacqueline Burns, Esquire. She testified that Mr. Thomas's decision to plead was very unusual. Ms. Burns stated that the reason Mr. Thomas offered for changing his plea was that he did not want his estranged wife to go through further testimony. While the defendant appeared to be rational when saying that he wished to change his plea, Ms. Burns stated that she was "not satisfied" with the reason offered by the defendant "but that he was resolved that he wanted to enter his plea. . . . Other than that, there was really no discussion as to the reason for why he was making this decision. . . ." Ms. Burns did not recall discussing with the defendant whether he was receiving any medication at the time of his plea. She testified that she would have recalled such a discussion. She also testified she was aware that the defendant had some mental illness but does not recall reviewing defendant's medical chart prior to his plea.
 STATE'S POSITION
At the time of defendant's change of plea in mid-trial on June 2, 1995, the defendant was represented by experienced trial counsel who had represented the defendant throughout pretrial conferences and who had represented the defendant for two days at trial. The defendant assisted counsel in trial preparation, jury selection, and preparing for examination.
On the day of the plea, defense counsel spent hours alone with the defendant. She carefully reviewed his rights and the consequences of his decision to change his plea. Based upon defense counsel's long exposure to defendant and her experience and training, she saw no reason to question his ability to understand the nature and consequences of the plea or to believe that his decision was not made knowingly and voluntarily. The defendant gave a rational reason for his decision to change his plea; he did not want to put the complaining witness, his estranged spouse, through the ordeal of further testimony.
Defendant had been before the trial judge for two days prior to the day of the plea. In the two days of trial prior to the plea, during motions, jury selection, and testimony, defendant appeared competent to experienced trial counsel and appeared able to assist counsel in all aspects of trial. On the day of the plea the Court had given defense counsel extensive time to discuss defendant's decision to plead and to advise the defendant regarding the plea. The Court went through a careful plea colloquy with the defendant. At its conclusion, the Court determined that the defendant was competent and that the plea was being entered knowingly and voluntarily. The Court accepted the plea on June 2, 1995.
For a period of at least two years no one questioned the defendant's competence to enter his plea or that the decision to plead was knowing and voluntary. Defendant was before the Court for sentencing and again apparently was competent that day. He also appeared on a motion to reduce his sentence and again apparently was competent as two experienced defense attorneys pressed the motion with the assistance of the defendant (See Transcript of Motion to Reduce Sentence, May 24, 1996). Defendant's initial application for post conviction relief was based upon grounds that his defense counsel was incompetent rather than that defendant himself was incompetent to enter a plea.
Defendant presented as his expert witness, a treating physician from the ACI, Dr. James Greer. Dr. Greer testified initially on direct examination that defendant was not able to enter a knowing, intelligent, and voluntary plea on June 2, 1995. However, on cross examination, Dr. Greer conceded that he could not testify as to whether the plea was voluntary or involuntary. All Dr. Greer could say was that given the fact that defendant had not taken his medication, defendant was impaired to some level at the time he entered his plea. Dr. Greer conceded that at no time while treating at the ACI was defendant impaired so that it interfered with his capacity to make decisions in everyday life. The State avers that from Dr. Greer's testimony, that he considered the defendant's competence to enter a plea demanded some higher level of competence than would be necessary to make decisions in other aspects of defendant's life. He concedes that there is no difference in the thought process involved in making everyday decisions and the decision as to whether or not to plea.
 THE LAW
A plea of guilty or nolo contendere must be made knowingly, intelligently, and voluntarily. Boykin v. Alabama, 395 U.S. 238
(1969). Such a plea involves the waiver of at least three constitutional rights: the right to jury trial; the privilege against self-incrimination; and the right to confront witnesses.Id., at 243. A defendant may not plead guilty unless he does so "competently and intelligently." Godinez v. Moran, 509 U.S. 394, 396, 113 S.Ct. 2680, 2685 (1993), quoting Johnson v. Zerbst,304 U.S. 458, 468, 58 S.Ct. 1019, 1025 (1938).
Rhode Island has long required trial judges to address the defendant personally in open court, to apprise the defendant of the nature of the charges against him, and the effect of a plea on his constitutional rights. Cole v. Langlois, 99 R.I. 138,206 A.2d 216, (1965), see also R.I. Super. Ct. R. Cr. P. 11 ("The court . . . shall not accept such plea . . . without first addressing the defendant personally and determining that the plea is made voluntarily with understanding of the nature of the charge and the consequences of the plea.") In Bishop v. Langlois,106 R.I. 56, 256 A.2d 20 (1969), Rhode Island adopted the holding of McCarthy v. United States, 394 U.S. 459 (1969) that, absent strict compliance with Rule 11's requirement that the record demonstrate adherence to its prerequisites, a plea should be vacated. Bishop, 106 R.I. at 66-67. Further, the standard colloquy used by a trial court to accept a guilty plea to a criminal offense may not be adequate to assure the validity of a plea offered by a defendant of questionable mental competence.United States v. Masthers, 539 F.2d 721, 728 (D.C. Cir. 1976). The nature of a Rule 11 inquiry must necessarily vary from case to case . . . "and in such inquiries, matters of reality, and not mere ritual, should be controlling." Id., at 729, quotingMcCarthy, 394 U.S. at 468-69.
The issue in this case is whether or not the defendant was incompetent to enter a plea, knowingly, intelligently, and voluntarily or whether he was impaired, by reasons of mental illness, to be incapable of entering a plea, or because he was not taking his prescribed medication was he unable to plead as aforesaid.
 CASE DISCUSSION
The defense focuses on the fact that when the trial judge asked the defendant if he was under the influence of any medication, that the defendant's response was "I've been off my medication."
The defense argues that the Court's failure to recognize this "red flag" and to inquire further of the defendant, invalidates the defendant's plea. That the Court, if it inquired further, would have learned salient facts about the state of the defendant's mental health and that without such inquiry, it was impossible to determine if the plea entered by the defendant was a knowing, intelligent, and voluntary plea.
The defense further argues that the uncontradicted opinion of the expert defense witness, Dr. James Greer, that the defendant was impaired at the time of his plea because he was off his medication, is sufficient to invalidate the defendant's plea of June 2, 1995. The witness was not able to opine to what degree or extent the defendant was impaired because he did not see or examine the defendant on the day in question. His opinion is based on the fact that when someone on medication for a psychotic disorder does not take the medication, there is a degree of impairment.
The State argues that Dr. Greer's testimony falls far short of the medical certainty needed to be sufficient to invalidate the defendant's plea.
Defendant's assertion that he was not competent to enter a guilty plea or his plea was not knowing and voluntary on June 2, 1995, is argued by the State not supported in the record. Although on direct examination, Dr. Greer in response to defense counsel's question, states that the plea was not voluntary, on cross examination, Dr. Greer reveals that he really cannot say that. Dr. Greer states, on direct examination, that a reason for that opinion is that at the time of his plea, defendant had been off medication for "several weeks." In fact, medical records reveal that the defendant was taking his medication up to 10 days before the plea. Dr. Greer seeks to support his opinion by the medical records. At no time, in the years of medical records that were reviewed by the defense witness, was defendant incompetent to make any other decisions. At no time do the medical records reveal that the defendant was impelled to make any decisions by virtue of his psychological condition. Dr. Greer admitted; on cross examination, that defendant on the day of the plea appeared to understand the consequences of his plea. He also goes on to admit, on cross examination, that the most he can say is that defendant's ability to make choices may have been impaired.
The State argues that neither the prosecution attorney, defense counsel, nor the trial judge observed any behavior by the defendant that would support a conclusion that the defendant was not competent or that his plea was not made knowingly and voluntarily.
Dr. Greer was unable to testify that on the day of the plea, the defendant was impaired to such an extent that the plea was involuntary because it was not an act of the defendant's will.
Dr. Greer testified that while the defendant made a knowing plea, he cannot say that it was voluntary. The State concludes that the record is devoid of any suggestion that the defendant's plea was coerced or otherwise involuntary. There is no information either in the court record or the defendant's medical record to substantiate a claim that the defendant's plea was unknowing or involuntary.
In order to determine whether or not the defendant was capable, on June 2, 1995, of making a plea in a knowing and voluntary manner, a defendant must be competent on two levels. First, the defendant must be competent to participate in a judicial proceeding and the second is that the defendant be capable of making a knowing and intelligent waiver of his constitutional rights.
In State v. Buxton, 643 A.2d 172 (Rd. 94) our court at page 175 cites to State v. Cook, 244 A.2d 822 at 835 (R.I. 1968) which determined that in order for a court to permit an accused to be subject to prosecution, three things must be found: first, that the defendant understands the nature of the charges brought against the defendant; second, that the defendant appreciates the purpose and object of the trial proceedings based thereon: and third, that the defendant has the mental capacity to assist reasonably and rationally his counsel in preparing and putting forth a defense to the criminal charges of which the defendant stands accused.
In making these findings, the Court in Buxton at p. 175 declares, "Unfortunately there is no hard and fast rule for determining whether a defendant possesses the necessary mental capacity to ensure an adequate protection of the defendant's basic constitutional rights. There is differing degrees and variations of mental illness not all of which preclude criminal prosecution."
A trial justice's decision regarding the defendant's competency will not be disturbed unless the trial justice clearly abused the trial justice's discretion (State v. Cook, 744 A.2d 833 at 835). In the case of Godinez v. Moran, 509 U.S. 389, 113 S.Ct. 2687 (1993) the U.S. Supreme Court held that as a matter of due process, there was no different standard of competency involved when a person pleads guilty from when a person proceeds to trial. In Godinez, the defendant had argued that because a defendant waives significant constitutional rights at the time of a plea, a greater degree of competence is involved than when a defendant assists his counsel at trial. The court held, at509 U.S. 398-399:
 [E]ven assuming that there is some meaningful distinction between the capacity for "reasoned choice" and a "rational understanding" of the proceedings, we reject the notion that competence to plead guilty or to waive the right to counsel must be measured by a standard that is higher than (or even different from) the Dusky standard.
 We begin with the guilty plea. A defendant who stands trial is likely to be presented with choices that entail relinquishment of the same rights that are relinquished by a defendant who pleads guilty: He will ordinarily have to decide whether to waive his "privilege against compulsory self-incrimination," Boykin v. Alabama, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), by taking the witness stand; if the option is available, he may have to decide whether to waive his "right to trial by jury," ibid.; and, in consultation with counsel, he may have to decide whether to waive his "right to confront [his] accusers," ibid., by declining to cross-examine witnesses for the prosecution. A defendant who pleads not guilty, moreover, faces still other strategic choices: In consultation with his attorney, he may be called upon to decide, among other things, whether (and how) to put on a defense and whether to raise one or more affirmative defenses. In sum, all criminal defendants — not merely those who plead guilty — may be required to make important decisions once criminal proceedings have been initiated. And while the decision to plead guilty is undeniably a profound one, it is no more complicated than the sum total of decisions that a defendant may be called upon to make during the course of a trial. (The decision to plead guilty is also made over a shorter period of time, without the distraction and burden of a trial.) This being so, we can conceive of no basis for demanding a higher level of competence for those defendants who choose to plead guilty. If the Dusky standard is adequate for defendants who plead not guilty, it is necessarily adequate for those who plead guilty.
The court in Godinez, however, required further inquiries must be made of a defendant when a plea is entered.
See Godinez, at 509 U.S. 400-401:
 A finding that a defendant is competent to stand trial, however, is not all that is necessary before he may be permitted to plead guilty or waive his right to counsel. In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. Parke v. Raley, 506 U.S. 20, 28-29, 113 S.C. 517, 523, 121 L.Ed.2d 391 (1992) (guilty plea); Faretta, supra, 422, U.S., at 835, 95 S.Ct., at 2541 (waiver of counsel). In this sense there is a "heightened" standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of competence.
 The focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. See Drope v. Missouri, supra, 420 U.S., at 171, 95 S.Ct., at 903 (defendant is incompetent if he "lacks the capacity to understand the nature and object of the proceedings against him"). The purpose of the "knowing and voluntary" inquiry, by contrast, is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced. See Faretta v. California, supra, 422 U.S., at 835, 95 S.Ct., at 2541 (defendant waiving counsel must be "made aware of the dangers and disadvantages of self-representation, so that the record will establish that `he knows what he is doing and his choice is made with eyes open'") (quoting Adams v. United States ex rel. McCann, 317 U.S. 269, 279, 63 S.Ct. 236, 242, 87 L.Ed. 268 (1942)); Boykin v. Alabama, 395 U.S., at 244, 89 S.Ct., at 1712 (defendant pleading guilty must have "a full understanding of what the plea connotes and of its consequence").
In the case at bar, the Court heard testimony from James Greer, M.D., a well known and highly respected psychiatrist who has testified as an expert many times in our courts.
An expert opinion is one which assists the court as fact finder, by testifying to matters outside the ben of ordinary persons. Certainly the field of psychiatry is well within that category.
Dr. Greer testified that he had met with the defendant several times over a period of time in the first six months of 1995 and had diagnosed the defendant as suffering from a schizo-affective disorder, which the witness described as problems with mood fluctuations such as depression.
The witness then testified to a series of symptoms which might include hallucinations, a variety of delusions, and disorganized thought processes.
The defendant was prescribed Stelazine, Zoloft, and cogentin at appropriate dosages.
The witness indicated that a cessation of medication would cause a recurrence of the psychotic symptoms earlier described. He further opined that this decompensation would not necessarily be apparent to those in the proximity of the person in question.
On cross examination, the witness, after searching the defendant's medical record, could find no instance where there was a report of the defendant having any hallucinations or responding to any commands given to defendant during a hallucination. The record was also devoid of any instance in which the defendant was recorded as having an inability to make intelligent and rational choices. The witness also agreed, on cross examination, that the defendant took some of his medications on some days and didn't take some on other days. That within 10 days of the plea on June 2, 1995, the record confirms the defendant had refused his medication.
Dr. Greer also admitted that while he felt the defendant was probably impaired when he made his plea on June 2, 1995, the witness could not offer an opinion as to whether the degree of improvement was 10 percent or 90 percent or a point in between.
At the same time, however, Dr. Greer was of the opinion that the defendant was able to understand the consequence of his plea.
When asked if he knew whether or not the defendant's plea was knowing, intelligent, and voluntary, the witness replied that he didn't know, he was not there and did not examine the defendant on the day of the plea.
This Court, after a review of the witness's testimony at the September 28, 1998 hearing, finds that the expert witness's opinion that the defendant was impaired on the day of his plea to the charges on June 2, 1995 by virtue of the defendant's refusal to take the medication prescribed to him, is an opinion not supported by the record in this case and one, while although sincerely rendered by the expert witness, was based on speculation on how the witness thought the defendant may have been on the date in question and as a result has no weight on the issue of the defendant's ability to make a knowing, willing, and voluntary plea to the charges on June 2, 1995 when contrasted with the court record and this Court's observations. The expert was unable to state, with any degree of medical certainty, what degree of impairment may have been experienced by the defendant, only that to some degree he was impaired and that this impairment could invalidate defendant's plea. This opinion is not based on any personal examination of the defendant and is therefore of no help to the Court on this issue.
The Court relies on its own recollection of the circumstances surrounding the defendant's plea, the record of proceedings and the case law previously cited in reaching its decision on this motion.
The defendant's assertion that because the trial judge did not address the question of defendant's mental illness when the defendant stated to the Court during his plea that he was "off his medication" and that, therefore, the defendant's plea was invalid, is without merit.
Even if the Court had pursued the answer of the defendant and responded to the "red flag" which the defendant avers was raised by the defendant's answer to the medication question and even if the Court, as urged by the defense, ascertained the nature and dosage of the medication formerly taken by the defendant, that would not have been persuasive that the plea was not knowingly, willingly, voluntarily, and intelligently made.
The important aspect of the taking of a plea when a defendant is or is not on medication is to determine whether or not, because of the medication, or lack of it, the defendant was capable of making a plea in accordance with his careful consideration of the plea, his knowing and intelligent waiver of his rights, and with full knowledge of the consequences of his voluntary plea and waiver of rights.
In the instant case, the trial judge had the opportunity to pre try the case on several occasions, to observe the defendant personally not only in the taking of the plea, but in the act of choosing a jury, watching him interact with his trial counsel and assist her in this function, as well as in consulting with her during the direct examination of the complaining witness who was examined for an entire afternoon court session.
The Court gave the defendant's attorney all the time needed to confer with the defendant about the admissibility of his making a plea, and perhaps most importantly, the Court was able to observe and interact with the defendant in the actual taking of the plea. The transcript of the plea itself is hereby incorporated in this decision by reference, as if set forth in full.
The defendant's responses to the plea colloquy on June 2, 1995 were entirely responsive, appropriate, intelligent, and in this Court's considered opinion, made in a knowing, willing, and voluntary manner.
There was not a scintilla of evidence that the defendant was laboring under a disability of any kind during the trial or the plea itself.
Based on a review of the memoranda submitted, the case law as cited in this decision and the personal observations of the Court in the making of the plea by the defendant, this Court finds, as a matter of fact, and as a conclusion of law, that on June 2, 1995, the defendant Carl Thomas possessed the mental perspicacity to make the important decision of entering a plea in a knowing, willing, and intelligent manner and to also in the same regard, make a knowing, willing, and intelligent waiver of his constitutional rights.
The defendant's motion to vacate the defendant's plea is hereby denied.