Gerard T. OUIMETTE

v.

STATE.

No. 2000–131–APPEAL.

Supreme Court of Rhode Island.

Dec. 14, 2001.

Russell Weddell, Taunton, Massachusetts, John F. Cicilline/Vincent Oddo, Bristol, for Plaintiff.

Lauren Sandler Zurier, Providence, Aaron Weisman, for Defendant.

Present: WILLIAMS, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on November 6, 2001, on appeal by the applicant, Gerard T. Ouimette (Ouimette or applicant), from a Superior Court judgment, denying his application for post-conviction relief. The applicant is before the Court in response to a sentence enhancement of life imprisonment without parole, pursuant to 18 U.S.C. § 3559(c)(2)(F), handed down by a judge of the United States District Court of Rhode Island. The applicant sought to vacate the state court convictions on various grounds, all aimed at invalidating the sentence enhancement provisions provided by Federal Law.

### Facts and Travel

In 1958, at the age of eighteen, Ouimette was charged with armed robbery, to which he entered a plea of *nolo contendere,* and was sentenced to six years at the Adult Correctional Institutions by a justice of the Superior Court. In 1976, Ouimette pled to amended charges of assault with a dangerous weapon and conspiracy to commit assault with a dangerous weapon. He again entered a *nolo contendere* plea and was sentenced to a three-year suspended sentence. In 1981, Ouimette petitioned for post-conviction relief and sought to withdraw his plea in the 1976 conviction, based upon the assertion that there was no factual basis for the plea. The Superior Court denied relief, and, although Ouimette appealed this judgment to the Supreme Court, his counsel subsequently withdrew the appeal after Ouimette was released from custody.[1]

In 1996, based upon these prior state court convictions, which qualified as serious violent felonies pursuant to 18 U.S.C. § 3559(c)(2)(F),[2] the United States District

---

1. The court file reflects that on February 6, 1981, Ouimette was presented as a violator of the probation that was imposed in 1976, and ordered held without bail. He thereupon sought to vacate this plea, alleging that there was no factual basis for the conviction. This

petition was denied. However, after a full evidentiary hearing, Ouimette was found not to be a violator of the conditions of his probation and was ordered released from custody.

2. From the record it appears that the underlying conviction in Federal District Court was

Court sentenced Ouimette to life imprisonment without the possibility of parole. The applicant thereupon turned to the Superior Court and sought, through post-conviction relief proceedings, to vacate these convictions. The trial justice denied each application, finding that Ouimette was represented by counsel for his plea to the crime of robbery in 1958 and that he understood the nature and consequences of his actions. He also found that Ouimette had an eighth-grade education and that, before his plea in 1958, Ouimette had previous experience in Rhode Island's criminal courtrooms, having entered pleas in the Sixth Division of the Rhode Island District Court on two separate occasions.[3]

The trial justice further determined that, based upon the presumption of regularity that attaches to a sentencing procedure, Ouimette had not met the burden of proof necessary to overcome that presumption and that he failed to establish that his 1958 plea was not a knowing and voluntary waiver of his right to a jury trial.

The trial justice also determined that, based upon his unsuccessful and unappealed previous challenge to his 1976 conviction, Ouimette's 1998 claims were barred by the doctrine of *res judicata*. Accordingly, the trial justice declined to vacate either conviction.

The applicant raises three issues on appeal. First, arguing that the absence of counsel renders that plea presumptively void, Ouimette maintains that the Superior Court erred in finding that he was represented by counsel at his 1958 plea. Second, arguing ineffective assistance of counsel, Ouimette challenges the finding that his 1958 plea was knowing, intelligent and voluntary and challenges the trial justice's

reliance on the presumption of regularity inherent in a final judgment. Finally, Ouimette asserts that his 1976 plea and sentence should be vacated on the grounds that the plea was not made with an understanding of the nature of the charges and because no factual basis existed for the plea. We deny the appeal.

■■■ The findings of a trial justice, on applications for post-conviction relief, will not be disturbed on appeal unless there is clear error or a showing that the hearing justice overlooked or misconceived material evidence. *Brennan v. Vose*, 764 A.2d 168, 174 (R.I.2001). However, questions of fact concerning whether a defendant's constitutional rights have been infringed, and mixed questions of law and fact with constitutional implications, are reviewed *de novo*. *Powers v. State*, 734 A.2d 508, 514 (R.I.1999); *Mastracchio v. Moran*, 698 A.2d 706, 710 (R.I.1997). Findings of historical fact, and inferences drawn from those facts, will still be accorded great deference by this Court, even when a *de novo* standard is applied to the issues of constitutional dimension. *Powers*, 734 A.2d at 514.

### 1958 Plea

In 1965, in the leading case of *Cole v. Langlois*, 99 R.I. 138, 206 A.2d 216 (1965), this Court held that before accepting a plea of guilty or *nolo contendere*, the Superior Court justice was obliged to determine whether a criminal defendant was aware of the nature of a plea and its effect on his or her fundamental rights, including the right to a jury trial. We declared that this requirement applied notwithstanding that an accused was represented by counsel. *Id.* at 142, 206 A.2d at 218. We held that

conspiracy to collect extensions of credit by extortion and actual collections of credit by extortion and aiding and abetting.

3. This experience included both arraignments and convictions in misdemeanor cases.

the court should advise and admonish the defendant about the nature of the charges and that this Court will look for record evidence to ascertain whether a criminal defendant was made aware of the consequences of a plea and the rights that the defendant was giving up, including the right to a jury trial. *Id.* at 143–44, 206 A.2d at 219. Later, in *Hall v. Langlois*, 105 R.I. 642, 254 A.2d 282 (1969), we qualified our holding in *Cole* and declared that the failure to comply with the obligation to advise a defendant of the nature and consequences of a plea was not fatal when the record as a whole establishes that the trial justice "was relieved of the obligation of advising and admonishing [the defendant] because he had ascertained upon preliminary inquiry from petitioner that he was already fully aware and cognizant of the effect and significance of such a plea." *Id.* at 645, 254 A.2d at 284. Further, we reiterated that the burden of proof fell upon the party challenging the validity of a plea to establish, by a preponderance of the evidence, that he did not already understand the nature of the charges and the rights he was giving up, either through prior experience with the criminal courts of this state or by reason of having been so advised by counsel. *Id.* Finally, in *Bishop v. Langlois*, 106 R.I. 56, 63, 256 A.2d 20, 23 (1969), we acknowledged that before our holding in *Cole*, "defendants were [rarely] informed by the court or, for that matter, by counsel, of the effect upon their constitutional rights of the plea of *nolo contendere* or guilty." However, we also recognized that a plea in a criminal case was motivated by a desire for a moderation of sentence and that a tacit admission of guilt was given in exchange for a lenient sentence, often a suspension of sentence based on the defendant's promise of future good behavior. *Id.* at 63–64, 256 A.2d at 23–24. Significantly, we reiterated that "[i]n no manner did this practice strike at the in-

tegrity of the guilt-finding process." *Id.* at 63, 256 A.2d at 24. In light of this time-honored procedure, we refused to authorize those defendants who entered into these bargains to challenge the voluntariness of their pleas based upon a retroactive application of our holding in *Cole*. *Bishop*, 106 R.I. at 64, 256 A.2d at 24. Thus, we declined to apply *Cole* retrospectively. *Id.* We noted that in *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274, 279 (1969), decided one month prior to our holding in *Bishop*, the United States Supreme Court held that it was impermissible to presume a waiver of constitutional rights by a criminal defendant if the record was silent in regard to the voluntariness of the plea. Record proof of an intelligent and understanding waiver of a defendant's rights was required in order to protect the constitutional guarantees against compulsory self-incrimination, the right to a jury trial and the right to confront one's accusers. *Id.* Subsequently, in *Flint v. Sharkey*, 107 R.I. 530, 534, 268 A.2d 714, 717 (1970), this Court held that *Boykin's* requirements were prospective and did not apply to pre-*Boykin* plea proceedings. However, a plea entered subsequent to *Bishop* or *Boykin* "will be vacated unless the record shows that the court has conducted an on-the-record examination of the defendant before accepting [the] plea [in order] to determine if the plea is being made voluntarily with an understanding of the nature of the charge and the consequences of the plea." *Flint*, 107 R.I. at 537, 268 A.2d at 719.

Nevertheless, with respect to pleas entered before *Boykin*, a defendant who is challenging the voluntariness of a plea is not without a remedy if constitutional deficiencies exist in his conviction. *Flint*, 107 R.I. at 535, 268 A.2d at 718. The substantive rights protected by the formal re-

quirements of *Boykin* still obtain and, although a formal record is not required, these pleas must have been made by a defendant with full knowledge of the nature of the charges and the constitutional rights that were implicated. *Flint*, 107 R.I. at 535–36, 268 A.2d at 718.

■ In 1992, the Supreme Court revisited these issues in *Parke v. Raley*, 506 U.S. 20, 29–30, 113 S.Ct. 517, 523, 121 L.Ed.2d 391, 403–04 (1992), and addressed the balance between the presumption of *regularity* that attaches to final judgments against the presumption of *invalidity* that arises from a record that does not clearly indicate that a criminal defendant knowingly and voluntarily waived his constitutional rights. In examining a conviction that was allegedly based upon an uninformed guilty plea, the Court distinguished *Boykin* challenges that are made on direct review of a conviction and disputes that arise in collateral proceedings. *Id.* In *Parke*, the defendant undertook a collateral challenge to prior convictions that were final judgments. *Id.* The Court refused to apply the presumption of invalidity simply because there was no record, holding that "it defies logic to presume from the mere unavailability of a transcript [in the absence of governmental misconduct] that the defendant was not advised of his rights." *Id.* at 30, 113 S.Ct. at 524, 121 L.Ed.2d at 404. Although, as Ouimette points out, Raley's plea was entered in 1986, years after *Boykin* colloquies become mandatory, we remain satisfied that, in collateral proceedings attacking the validity of a conviction used for purposes of sentence enhancement, the presumption of regularity attaches to a final judgment of conviction, notwithstanding the absence of a record. As the Supreme Court noted, to hold otherwise would "improperly ignore another presumption deeply rooted in our jurisprudence: the 'presumption of regularity' that

attaches to final judgments, even when the question is waiver of constitutional rights." *Parke*, 506 U.S. at 29, 113 S.Ct. at 523, 121 L.Ed.2d at 404. In the present case, without question, the presumption of regularity governs our consideration of the validity of Ouimette's 1958 plea to the crime of armed robbery in what is a collateral attack on a previous conviction that long has been a final judgment.

Additionally, reallocating the burden of proof from the applicant to the state, merely because of a scant record in a forty-three-year old conviction, would be exceedingly unjust.

"If raising a *Boykin* claim and pointing to a missing record suffices to place the entire burden of proof on the government, the prosecution will not infrequently be forced to expend considerable effort and expense attempting to reconstruct records from farflung States where procedures are unfamiliar and memories unreliable." *Parke*, 506 U.S. at 32, 113 S.Ct. at 524–25, 121 L.Ed.2d at 405.

■ Therefore, we are satisfied that the trial justice was correct when he determined that the presumption of regularity attached to these final judgments. Further, we note that the hearing justice also concluded that Ouimette's recollection of events was "not credible, not reliable, and not sufficient" to overcome the presumption of regularity that attaches to final judgments or to meet his evidentiary burden of proving that his plea was not entered willingly and knowingly. We conclude that the trial justice did not err in making these findings. The applicant simply has failed to overcome the presumption of validity of this criminal conviction by a preponderance of the evidence.

### 1976 Plea

■ Ouimette also argues that the 1976 conviction, based upon a plea of *nolo*

*contendere* to amended charges of assault with a dangerous weapon and conspiracy to commit assault with a dangerous weapon, should be vacated because the plea was not voluntary and because he did not understand the nature of the charges and the rights he was giving up.[4] As noted, Ouimette previously litigated, by way of post-conviction relief, the validity of his 1976 conviction after the state alleged that he violated the terms and conditions of his probation. Although the issue of voluntariness was not raised in 1981, the question of whether there was a factual basis for the conviction was fully considered and rejected by the trial court. As a result, because Ouimette could have raised this challenge in the previous proceeding, the issue of voluntariness is barred by the doctrine of *res judicata* and amounts to a waiver of this claim. *Miguel v. State,* 774 A.2d 19, 21 (R.I.2001); *Johnson v. Mullen,* 120 R.I. 701, 705, 390 A.2d 909, 911 (1978). *Res judicata* bars the relitigation of any issue that could have been litigated in a prior proceeding, even if the particular issue was not raised. *Carillo v. Moran,* 463 A.2d 178, 183 (R.I.1983). In order for *res judicata* to apply in a subsequent proceeding, four elements must be met: (1) identity of the parties; (2) identity of the issues; (3) identity of the claims for relief; and (4) finality of the judgment. *Estate of Bassett v. Stone,* 458 A.2d 1078, 1080 (R.I. 1983). We are satisfied that all four elements are present in this case. Obviously, the parties are the same, as are the issues and the claim for relief; Ouimette challenged the validity of his 1976 plea and sought to have the conviction set aside. Although the question of whether it was a knowing and voluntary plea was not raised during the prior proceeding, it could have been litigated. Thus, *res judicata* bars the litigation of this issue. Finally, the judgment denying his petition to vacate the 1976 plea became a final judgment when Ouimette withdrew his appeal to this Court.

Therefore, all the elements necessary for *res judicata* are satisfied in this case. We conclude that the trial justice did not err when he decided that Ouimette's challenge to the 1976 plea was barred by *res judicata.*

### Ineffective Assistance of Counsel

The applicant also alleged that he was denied the effective assistance of counsel in 1958, and again during the original post-conviction relief proceeding, because his lawyer failed to raise the issue of voluntariness and failed to prosecute an appeal to this Court.

 With respect to the 1958 robbery conviction, Ouimette utterly failed to introduce any evidence that his counsel was ineffective, nor has he established that counsel's performance was so deficient as to amount to a denial of counsel.[5]

 We long have recognized that a strong presumption exists that an attorney's performance falls within the range of reasonable professional assistance and

---

4. This plea was entered nearly two decades after the 1958 robbery conviction, at a time when this applicant was an experienced veteran of the criminal justice system. As the First Circuit recognized in the applicant's appeal of the federal charges, "[g]iven Ouimette's lengthy history of violent criminal activity, the 'three strikes' sentence cannot be considered grossly disproportionate." *United States v. Ouimette,* 137 F.3d 24, 40 n. 19 (1st Cir.1998).

5. Ouimette's testimony that there were "a couple of guys" standing with him during the sentencing hearing is insufficient to overcome the presumption of regularity that attaches to a final judgment. In fact, during testimony, Ouimette admitted to having been represented by counsel during the plea hearing.

sound strategy, creating a heavy burden for a party to establish constitutionally ineffective representation. *Hughes v. State,* 656 A.2d 971, 972 (R.I.1995). Based upon the standard established in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has stated that in order to establish a claim for ineffective assistance of counsel, a defendant must show: (1) that the counsel's performance was so deficient and the errors so serious that they violate a defendant's Sixth Amendment guaranty of counsel; and, (2) that this deficient performance prejudiced his or her defense and deprived the defendant of his or her right to a fair trial. *Powers v. State,* 734 A.2d 508, 522 (R.I.1999).

▇ Rather than arguing to the trial court that his counsel's performance was deficient, amounting to ineffective representation, Ouimette elected to file a post-decision affidavit by attorney John F. Cicilline (Cicilline) in which he testified that his reason for withdrawing applicant's 1981 appeal was because "the issues had become moot." This affidavit is not sufficient support for a claim of ineffective assistance of counsel. It amounts to inadmissible hearsay and is not a part of the record in this case. *See State v. Turley,* 113 R.I. 104, 109, 318 A.2d 455, 458 (1974) (unfounded claims or unsupported charges of ineffectiveness of counsel are not legally competent evidence to establish a denial of effective assistance of counsel); *see also* Sup.Ct. R.App. P. 10(a).[6] Therefore, the evidence required to support a claim of ineffective assistance of counsel is lacking in this case. Additionally, Cicilline's affidavit, if admitted, fails to rebut the pre-sumption that an attorney's actions fall within the reasonable range of professional conduct. The fact that Cicilline did not raise an issue, or pursue an appeal, does not amount to ineffective assistance of counsel. *See State v. D'Alo,* 477 A.2d 89, 92 (R.I.1984) (decisions made and actions taken by counsel as trial strategy must have resulted from neglect or ignorance to constitute ineffective assistance of counsel). The affidavit is silent in regard to why an available claim for relief was not asserted and does not establish, in any way, that Cicilline's conduct justifies the consideration of these claims twenty-five years after the fact. Additionally, the applicant testified that he was satisfied with the performance of this well-respected and seasoned trial lawyer and had engaged Cicilline to pursue this case in the Superior Court.

## Conclusion

For the aforementioned reasons, the applicant's appeal is denied and dismissed. The judgment denying Ouimette's application for post-conviction relief is affirmed. The papers of this case are remanded to the Superior Court.

▇

---

6. **Article I, Rule 10(a) of the Supreme Court Rules of Appellate Procedure provides:**

"**The record on appeal.**—(a) *Composition of the Record on Appeal.* The original papers and exhibits filed in the trial court, the transcript of proceedings or electronic sound recordings thereof, if any, and a certified copy of the docket entries prepared by the clerk of the trial court shall constitute the record on appeal in all cases."