**Jason FERRELL**

v.

**A.T. WALL, Warden of the Adult Correctional Institutions.**

Nos. 2007–92–Appeal, 2007–291–M.P.

Supreme Court of Rhode Island.

June 8, 2009.

Aaron L. Weisman, Department of Attorney General, for Plaintiff.

John A. MacFadyen, Esq., Providence, for Defendant.

Present: FLAHERTY, SUTTELL, ROBINSON, JJ., and WILLIAMS, C.J. (ret.).

## O P I N I O N

Chief Justice WILLIAMS (ret.), for the Court.

In the fourth appeal before this Court stemming from the murder of John Carpenter on December 18, 1995, the state is asking this Court to reverse the judgment of the motion justice who reduced the sentence of the applicant, Jason Ferrell (applicant or Ferrell), and granted him postconviction relief. The applicant and several other defendants were tried by jury on several charges associated with Carpenter's murder. After a monthlong trial, the jury acquitted the applicant of first-degree murder, but convicted him of conspiracy to commit first-degree murder, conspiracy to assault with intent to mur-

der, and assault with intent to murder. The applicant's efforts to reverse his convictions were rebuffed by this Court in *State v. Oliveira,* 774 A.2d 893 (R.I.2001), and later in *Ferrell v. Wall,* 889 A.2d 177 (R.I.2005) (*Ferrell III*). Although the trial justice originally sentenced the applicant to an aggregate of forty years, in the most recent adjudication by the Superior Court, the motion justice reduced his sentence to twenty years and then set aside his convictions based on an allegation of ineffective assistance by the applicant's trial attorney. It is the motion justice's reduction of the applicant's sentence and his granting of postconviction relief that are the subjects of the instant appeal.

# I

## Facts and Travel

Because the facts of this case previously have been recited in *Oliveira* and *Ferrell III,* we will set out only those facts that are relevant to the instant appeal. It is first necessary to summarize briefly the circumstances of the murder that serves as the origin of applicant's convictions.

Three days after the shooting death of Wayne Baptista, on December 15, 1995, John Carpenter was shot and killed in what appeared to be a vengeful drive-by shooting. Baptista's closest friends had been Gahil Oliveira, Robert McKinney, and Ferrell. Shortly after Baptista was killed, the three friends had their arms tattooed with the word "Pearl" (Baptista's nickname), the date "12/15/95," and the acronym "RIP."

On the morning of December 18, 1995, Lorenzo Evans and Carpenter were driving in Carpenter's car when, according to Evans, he heard the sound of gunshots. At trial, Evans was the key prosecution witness. He testified that he had observed

a black Jeep Cherokee that began chasing Carpenter's vehicle at a high rate of speed. Gunshots were fired at both Evans and Carpenter from the occupants of the Jeep, at which time both Evans and Carpenter jumped out of the vehicle. Evans, who ran from the car and through the neighborhood, testified that he saw McKinney and Oliveira exit the Jeep carrying handguns. Evans continued to hear gunshots and saw McKinney and Oliveira approach Carpenter, who had fallen on the sidewalk. Carpenter died of fatal gunshot wounds.

Evans testified that when he next looked back at the street, he saw a white Ford Taurus with two occupants: Ferrell and Jermaine Campbell. He explained that Ferrell was sitting in the driver's seat of the Taurus, holding a "chrome object" that looked like a gun, which he was moving up and down. Shortly after this sighting, the police stopped Evans, arrested him, and took him to the police station. In his statement to the police, Evans said that he could not identify any of the shooters. However, the next day, Evans told the police that Sanders, Oliveira, and McKinney were the shooters and that Ferrell and Campbell were the occupants of the Taurus.

Oliveira, McKinney, Sanders, Campbell, and Ferrell (collectively defendants) all were indicted for the first-degree murder of Carpenter, assault with intent to murder Evans, and two counts of conspiracy to commit each of these crimes. All defendants were convicted of the two counts of conspiracy; Oliveira, McKinney, and Sanders were convicted of first-degree murder and assault with intent to murder; and Campbell was acquitted of both substantive charges. Ferrell, although acquitted of the murder charge, was found guilty of assault with intent to murder.

The travel of this case has spanned more than a decade. After the trial, applicant filed a motion to reduce his sentence under Rule 35 of the Superior Court Rules of Criminal Procedure. Meanwhile, in 2001, this Court denied the appeals of Oliveira, Sanders, McKinney, and Ferrell.[1] *Oliveira*, 774 A.2d at 926. Thereafter, Ferrell filed an application for postconviction relief; in 2005, the motion justice granted him postconviction relief on two grounds: (1) newly discovered evidence in the form of a videotaped recantation of evidence by Evans and (2) ineffective assistance of counsel by failing to amend a discovery request. The state appealed and this Court reversed, holding that the motion justice had erred in granting relief on both grounds. *Ferrell III*, 889 A.2d at 188, 191–92.

In November 2006, applicant filed a motion to amend his application for postconviction relief. He also filed a second amended application for postconviction relief and renewed his motion to reduce his sentence. After a hearing on both issues, the same motion justice who had presided over the earlier postconviction-relief hearing reduced applicant's sentence to twenty years in the aggregate.

In addressing the allegation that applicant's trial counsel was ineffective, the motion justice, in this postconviction-relief hearing, reviewed applicant's testimony, in which he had alleged that his trial attorney had asked him for money to pay the costs associated with his representation of Oliveira. The applicant also testified that during the trial, he was aware of his trial attorney's representational relationship with Oliveira. The motion justice concluded that because applicant's trial attorney was representing both applicant and his codefendant, albeit in an unrelated matter,

---

1. Jermaine Campbell did not appeal.

the attorney was faced with conflicting allegiances and was, in a sense, serving two masters. Specifically, the motion justice concluded that defense counsel's representation of Oliveira prevented him from engaging in effective plea-bargaining on behalf of applicant. He also determined that this conflict led to the implementation of an unsuccessful trial strategy: rather than argue to the jury that Evans's testimony was entirely false, the attorney should have argued that Evans was mistaken only about his identification of applicant and not about his identification of each of the other codefendants. According to the motion justice, applicant's trial attorney could not have pursued this course without, in effect, implicating Oliveira in the crimes in which he was charged. The motion justice, not satisfied with granting postconviction relief, also reduced applicant's sentence. He reduced applicant's sentence under count three from twenty years to ten years; the sentence on count two remained untouched because it already had been completed; and the sentence on count four was reduced to ten years probation.

The state appealed the motion justice's grant of Ferrell's application for postconviction relief to this Court, and it also petitioned this Court for a writ of certiorari with respect to the sentence reduction. We granted the state's petition for a writ of certiorari. Both the judgment stemming from the postconviction-relief hearing and the judgment stemming from the sentence-reduction hearing are now before this Court. The applicant also filed a cross-appeal asserting that the numerous other grounds for postconviction relief that he had raised at the hearing below were denied improperly.

## II

### Analysis

The state challenges both rulings of the motion justice. It contends that the mo-

tion justice erred in granting Ferrell's application for postconviction relief because applicant failed to demonstrate that his trial attorney had an actual conflict of interest that adversely affected the trial outcome. Secondly, the state argues that the motion justice should not have reduced applicant's sentence because the hearing on the sentence-reduction motion did not occur within a reasonable time from the initial filing of the motion. In his cross-appeal, applicant argues that the motion justice made six distinct errors, any one of which would entitle him to postconviction relief.

### A

### Postconviction Relief

This is Ferrell's second application for postconviction relief. In his first application, he alleged as grounds for relief, *inter alia,* that he had received ineffective assistance of counsel. Although applicant cited several specific instances of alleged ineffective assistance by his attorney, he failed to allege the particular claim that served as the basis for his second application, namely, that his trial attorney had a conflict of interest because he simultaneously represented both applicant and Oliveira, albeit in an unrelated criminal matter.

Before reaching the substance of Ferrell's ineffective-assistance-of-counsel allegation, we first must address a threshold issue-whether applicant's claim is barred by the well-established doctrine of *res judicata.* General Laws 1956 § 10–9.1–8, which applies to postconviction-relief applications, provides:

> "All grounds for relief available to an applicant at the time he or she commences a proceeding under this chapter must be raised in his or her original, or a supplemental or amended, application.

Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived in the proceeding that resulted in the conviction or sentence or in any other proceeding the applicant has taken to secure relief, may not be the basis for a subsequent application, unless the court finds that in the interest of justice the applicant should be permitted to assert such a ground for relief."[2]

As we noted in *Ramirez v. State*, 933 A.2d 1110, 1112 (R.I.2007), "[t]his Court previously has stated that § 10–9.1–8 codifies the doctrine of *res judicata* for postconviction-relief applications." *See also Miguel v. State*, 924 A.2d 3, 4–5 (R.I.2007) (mem.); *Figueroa v. State*, 897 A.2d 55, 56–57 (R.I. 2006) (mem.); *Taylor v. Wall*, 821 A.2d 685, 688 (R.I.2003).

■ Section 10–9.1–8 provides a procedural bar not only to issues that have been raised and decided in a previous postconviction-relief proceeding, but also to "the relitigation of any issue that *could have been litigated* in a prior proceeding, even if the particular issue was not raised." *Ouimette v. State*, 785 A.2d 1132, 1138 (R.I. 2001) (citing *Carillo v. Moran*, 463 A.2d 178, 183 (R.I.1983) (emphasis added)). We have held that this provision "means that a judgment on the merits in the first case not only is conclusive with regard to the issues that were actually determined but also precludes reconsideration of all other issues that *might have been raised* in the prior proceeding." *Ramirez*, 933 A.2d at 1112 (quoting *Figueroa*, 897 A.2d at 56–57)

(emphasis added); *see also Mattatall v. State*, 947 A.2d 896, 904–05 (R.I.2008).

■ For *res judicata* to apply, the following four elements must be established: "(1) identity of the parties; (2) identity of the issues; (3) identity of the claims for relief; and (4) finality of the judgment." *Ouimette*, 785 A.2d at 1138 (citing *Estate of Bassett v. Stone*, 458 A.2d 1078, 1080 (R.I.1983)).

■ The first element in this four-part analysis is met easily because the parties in each matter are identical. In both applications for postconviction relief, applicant's appeal was against Ashbel T. Wall, Director of the Department of Corrections of the State of Rhode Island.[3]

Both the second and third elements, requiring an identity of issues and an identity of claims, are satisfied because both applications for postconviction relief concern allegations of defense counsel's ineffectiveness. Although the first application contained other allegations of ineffective assistance of counsel while omitting any allegation that applicant's trial attorney had a conflict of interest, it is significant that applicant concedes that, at the time of trial, he knew of his attorney's professional relationship with one of his codefendants. Although it is unclear whether applicant knew of this representation before the trial on the merits commenced, it is clear from the record that, at the very latest, applicant learned of the representational relationship during the trial on the merits. Because applicant knew of his trial counsel's attorney-client relationship with Oli-

---

**2.** The statute quoted in the text (G.L. 1956 § 10–9.1–8) is entitled "Waiver of or failure to assert claims." We recognize that "waiver" and *"res judicata"* are closely related jurisprudential concepts.

**3.** We also note that there would be identity of the parties even if the state was the named

party. We have held in the past that "the director [of the Department of Corrections of the State of Rhode Island] and the state are the same for purposes of [G.L. 1956] § 10–9.1–8." *Taylor v. Wall*, 821 A.2d 685, 688 (R.I.2003).

veira during the trial, it follows that he was aware of this relationship at the time that he filed the first application for postconviction relief.[4]

The applicant could have and indeed should have raised this issue in his first application for postconviction relief. His failure to raise this allegation at that time results in a bar to the litigation of that issue and that claim for relief. This Court has not heard from applicant, nor can it glean from the record, a valid reason why this issue was not raised in the first application for postconviction relief. *See Ramirez*, 933 A.2d at 1112 (holding, with respect to the fact that the applicant had raised new claims for the first time in his third postconviction-relief application, that because the claims could have been raised in either prior application, they were barred based on the doctrine of *res judicata*); *Ouimette*, 785 A.2d at 1138 (holding that, although the question of whether the applicant's plea was knowing and voluntary was not raised in his previous application for postconviction relief, it could have been raised, and therefore litigation on that claim was barred by the doctrine of *res judicata*). Thus, even though this particular assertion of ineffective assistance of counsel is new, applicant is barred from litigating this issue because he failed to raise this alleged conflict of interest in his first application for postconviction relief, despite knowing of his trial counsel's attorney-client relationship with one of his codefendants.

Lastly, the final element for *res judicata* has been met because a final judgment was entered in this case. This Court reinstated applicant's convictions subsequent to his appeal on the first application for postconviction relief. Accordingly, all four elements required for the application of the doctrine of *res judicata* have been satisfied.

 Under § 10–9.1–8, an applicant is permitted to assert an otherwise estopped ground for relief only if it is in the "interest of justice." Although the term "interest of justice" can be defined only upon a review of the facts in a particular case, there nevertheless must be some sufficient finding, articulation, or explanation by the motion justice that an issue barred by the doctrine of *res judicata* merits consideration in the interest of justice. In the instant matter, the motion justice simply indicated, in a completely conclusory manner, that justice required him to reach applicant's allegation of ineffective assistance of counsel. Despite so stating, he completely failed to articulate a rationale as to why this claim could be litigated.

This Court never has definitively construed the phrase "interest of justice" as it is used in § 10–9.1–8. However, in the case at bar it is apparent that applicant has not demonstrated that the interest of justice requires this Court to revisit an issue that applicant could have raised in his first application for postconviction relief. *See Ramirez*, 933 A.2d at 1112 (in which this Court did not find that the interest of justice required litigation on newly asserted ineffective assistance of counsel claims); *Ouimette*, 785 A.2d at 1138 (in which this Court declined to hold that the interest of justice required litigation on the issue of whether the applicant had made a knowing and voluntary plea). We note once again that the motion justice failed to articulate any reason why, in his view, the interest of justice required the relitigation of applicant's claim of ineffec-

---

4. It was conceded at oral argument that this knowledge was "knowable" by counsel at the first postconviction-relief hearing.

tive assistance of counsel. Nor can this Court, after a review of the record, perceive a basis for concluding that the interest of justice requires such relitigation. All that is clear is that applicant knew, before the filing of the first application for postconviction relief, that he and one of his codefendants had shared the same attorney. We hold, therefore, that the motion justice erred in hearing Ferrell's second application for postconviction relief because it is barred by § 10–9.1–8 and the doctrine of *res judicata.* Accordingly, we reverse the judgment of the Superior Court and reinstate applicant's convictions.

## B

### Rule 35 Motion

The state also asserts that the motion justice erred in granting applicant's motion to reduce his sentence under Rule 35. The state specifically avers that applicant's motion was procedurally deficient because of the unnecessary and avoidable period that transpired between the filing of his motion to reduce and the hearing on that motion. The state also offers a substantive objection to applicant's sentence reduction, arguing that the trial justice was in the best position to impose sentences upon applicant and that the sentences she had imposed indeed were appropriate.

A hearing on applicant's motion to reduce his sentence is noted on the Superior Court docket sheet several times, and it is undisputed that on three dates (November 12, 1997, January 26, 1998, and April 29, 1998) applicant's motion was postponed for different reasons. The docket sheet also indicates that on May 7, 1998, the motion to reduce applicant's sentence was passed because the motion had been withdrawn. However, at his second postconviction-relief hearing, applicant heavily disputed that he had withdrawn this motion, citing the lower court transcript from May 7,

1998, as well as transportation records from the Rhode Island Department of Corrections. The motion justice found that because the transcript evidenced that neither the prosecutor nor the defense counsel appeared at the sentence-reduction motion and because the transportation records indicated that applicant did not travel to court on May 7, 1998, the docket sheet entry must be in error and that, therefore, applicant's motion to reduce his sentence never was withdrawn. We agree. Because it appears that the sentence-reduction motion was not withdrawn, we shall address the state's argument that applicant waived his right to a hearing on his Rule 35 motion.

Rule 35(a) provides that a "court may correct an illegal sentence at any time" as long as the motion to reduce the sentence is filed within 120 days after the sentence has been imposed. The rule also states: "[t]he court shall act on the motion within a reasonable time, provided that any delay by the court in ruling on the motion shall not prejudice the movant." *Id.*

■ Despite the contested travel of applicant's Rule 35 motion, both parties agree that applicant properly filed the motion within the requisite 120–day period after the sentence was imposed. Accordingly, the issue turns on whether the Superior Court acted on the motion "within a reasonable time." It is apparent that this language, requiring the motion to be heard within a reasonable time, is meant to protect the *movant. Cf. State v. Ferrara,* 748 A.2d 246, 248 (R.I.2000) (holding that the trial justice's failure to rule on a Rule 35 motion did not divest the trial justice of jurisdiction to entertain the defendant's motion). Nothing in Rule 35 or in this Court's decisions supports the proposition that said rule may be used to divest the Superior Court of its jurisdiction to hear a

sentence-reduction motion if a defendant waits "too long" to press for a hearing on the motion. The only instance in which the Superior Court could lack jurisdiction to hear a Rule 35 motion is set forth in the rule quite clearly: if the applicant fails to file a motion to reduce his or her sentence within 120 days after the sentence was imposed.

■ Hence, the Superior Court was not divested of its jurisdiction to entertain applicant's sentence-reduction motion because of the long amount of time that passed after applicant filed his motion. However, we take great issue with the fact that the motion justice even reached the sentence-reduction motion. Regardless of the order in which the motion justice addressed the sentence-reduction motion and the application for postconviction relief, the motion justice made two conclusions in his January 25, 2007 bench decision: (1) applicant's convictions should be vacated and (2) applicant's sentence should be reduced.

By granting the application for postconviction relief and reversing applicant's convictions, the motion justice bestowed upon applicant the chance for a new trial on the underlying charges. The motion justice's analysis should have stopped there. A motion justice should not provide for a new trial *and* at the same time reduce the sentences on the very convictions that he or she believes should be vacated. The only way the motion justice would have been able to address properly both the application for postconviction relief and the sentence-reduction motion is if he had first *denied* Ferrell's application for postconviction relief. Because the motion justice ruled in favor of applicant on the application for postconviction relief, he lacked the jurisdiction to make any determination on whether applicant's sentence should have been reduced. The order in which the motion justice disposed of these two distinct issues is irrelevant. The simple fact that the motion justice ruled on the postconviction-relief application only after deciding to reduce applicant's sentence does not affect our decision.

Accordingly, we conclude that it was improper for the motion justice to consider the applicant's Rule 35 motion for a sentence reduction in conjunction with Ferrell's application for postconviction relief when he found in favor of applicant on the postconviction-relief application. However, because we have reversed the motion justice on the postconviction-relief application, it would be appropriate, at this juncture, for a hearing to be held on applicant's sentence-reduction motion. Accordingly, we remand this case to the Superior Court for a proper hearing on the sentence-reduction motion.[5]

### C

### Applicant's Cross–Appeal

The applicant raises a number of other issues in his cross-appeal with respect to his application for postconviction relief. These issues, however, all were properly denied by the motion justice, either on their merits or because they already had been considered and rejected by the motion justice or by this Court on review. We will address each issue in turn.

### 1

### The Campbell Evidence

■ The first issue applicant raises in his cross-appeal is an assertion that the

---

**5.** Because the motion justice has retired, this matter now will require assignment to another justice of the Superior Court.

motion justice erred in refusing to consider whether the testimony of Jermaine Campbell, which became available after the trial on the merit s, warranted a new trial. The motion justice rejected this request based on this Court's decision in *Ferrell III,* in which we explained: "[B]ecause there was no finding that * * * the corroborating testimony of Campbell would, by [itself], have warranted post-conviction relief, the hearing justice's conclusion that [he was a] credible witness[ ] is irrelevant to our decision." *Ferrell III,* 889 A.2d at 188. This discussion, however brief, indicates quite clearly that this Court did not conclude that Campbell's testimony warranted a new trial. This Court long has taken the position that relitigation between the same parties concerning the same issues is barred under the doctrine of *res judicata. Miguel,* 924 A.2d at 4. Because applicant is asking this Court to do precisely what is barred by *res judicata* principles, we will not entertain the first issue applicant raised on appeal.

■ Furthermore, at the conclusion of *Ferrell III,* we issued a limited remand order, which stated: "[f]or the foregoing reasons, the judgment of the Superior Court [granting postconviction relief] is hereby reversed, and the defendant's 1997 convictions are reinstated. The record shall be remanded to the Superior Court for entry of judgment not inconsistent with this decision." *Ferrell III,* 889 A.2d at 192. We have held that our well-established "mandate rule 'provides that a lower court on remand must implement both the letter and spirit of the [appellate court's] mandate, and may not disregard the explicit directives of that court.' " *Hagopian v. Hagopian,* 960 A.2d 250, 253 (R.I.2008) (quoting *RICO Corp. v. Town of Exeter,* 836 A.2d 212, 218 (R.I.2003)). In elaborating on our mandate rule, we have explained:

"When a case has been once decided by this court on appeal, and remanded to the [Superior Court], whatever was before this court, and disposed of by its decree, is considered as finally settled. The [Superior Court] is bound by the decree as the law of the case, and must carry it into execution according to the mandate. That court cannot vary it, or examine it for any other purpose than execution; or give any other or further relief; or review it, even for apparent error, upon any matter decided on appeal; or intermeddle with it, further than to settle so much as has been remanded." *Pleasant Management, LLC v. Carrasco,* 960 A.2d 216, 223 (R.I.2008) (quoting *United States v. Thrasher,* 483 F.3d 977, 981 (9th Cir.2007)).

This Court specifically directed the lower court to reinstate applicant's 1997 convictions. Accordingly, we conclude that the motion justice properly stayed within this Court's mandate and did not err in refusing to consider the testimony of Campbell.

### 2

### Double Jeopardy

■ The applicant next argues that the motion justice erred in refusing to find that the consecutive sentences with respect to the two conspiracy convictions violated his guarantee against double jeopardy. The motion justice explained that he was "foreclosed from addressing the illegality of the conspiracy sentences" because applicant had failed to cross-appeal or raise the double jeopardy issue during the first postconviction-relief hearing. We agree with the motion justice. Although applicant asserted that he had received ineffective assistance of counsel because of his attorney's failure to raise the double jeopardy issue, he never raised double jeopardy itself as a separate issue below. Accordingly, we shall not consider this

claim for the first time on appeal. *See State v. Palmer*, 962 A.2d 758, 766 (R.I. 2009) ("In accordance with this Court's well-settled 'raise-or-waive' rule, we do not ordinarily consider at the appellate level issues not properly presented before the trial court.").

Moreover, not only did applicant fail to raise this issue in his first application for postconviction relief, this Court already has ruled, in applicant's direct appeal, that

> "Ferrell did not bring any concern over his possible conviction and sentencing on both counts before the trial justice's attention for her consideration. Consequently, Ferrell's failure to present a procedurally proper double jeopardy defense constitutes a waiver thereof under Rule 12(b)(2). As a result, the merits of Ferrell's claim cannot be reached." *Oliveira*, 774 A.2d at 920.

Therefore, the doctrine of *res judicata* likewise precludes a discussion concerning applicant's second contention of error. *See Carrozza v. Voccola*, 962 A.2d 73, 78 (R.I.2009) ("*Res judicata*, or claim preclusion, prohibits the 'relitigation of all issues that were tried or might have been tried in the original suit' * * *.") (quoting *E.W. Audet & Sons, Inc. v. Fireman's Fund Insurance Co. of Newark, New Jersey*, 635 A.2d 1181, 1186 (R.I.1994)).

### 3

### Radio Dispatch Evidence

In his third allegation of error, applicant maintains that the motion justice improperly refused to grant him a new trial based on trial counsel's misstatement of certain evidence relating to a radio dispatch. At trial, after an officer testified about a police radio broadcast that she had received about two male subjects in a white Ford Taurus, applicant's attorney referred to the subjects as the "two black individuals," even though the communica-

tion did not refer to the race of the individuals. This misstatement, that the occupants of the Taurus were black, is the source of applicant's particular allegation of error.

In the motion justice's ruling below, he summarily rejected this particular claim of ineffective assistance of counsel, explaining that the only issue of ineffective assistance of counsel that had not already been decided at a previous proceeding was that with respect to the conflict-of-interest issue, which we have discussed at length above. We agree and conclude that the motion justice properly rejected applicant's assertion that the allegation of ineffective assistance of counsel based on the radio dispatch evidence already has been decided by this Court. The doctrine of *res judicata* thereby precludes this Court from revisiting this already tried and decided issue.

### 4

### Baptista Alibi

The applicant next asserts that the motion justice erred in not considering whether the partial exclusion of Debra Baptista's alibi evidence (evidence that arguably could have provided applicant with an alibi at the time of the crime) constituted a violation of his right to compulsory process. The motion justice determined that he was precluded from addressing this issue because it already had been decided in a previous appeal before this Court. We concur. In applicant's direct appeal, we specifically reviewed this issue and concluded that applicant suffered no constitutional prejudice as a result of Baptista's excluded testimony. *See Ferrell III*, 889 A.2d at 191 (concluding that applicant "did not suffer constitutionally significant prejudice as a result of [Baptista's] excluded testimony"). The doctrine of *res judicata* bars relitigation on this issue;

that doctrine foreclosed not only review by the motion justice, but further review by this Court as well. *See, e.g., Carrozza,* 962 A.2d at 78; *Miguel,* 924 A.2d at 4–5.

### 5

### Assault with Intent to Commit Murder

■ The applicant's fifth allegation of error is that the motion justice improperly rejected his argument that the evidence adduced at trial was legally insufficient to support his conviction of assault with intent to commit murder. Citing *State v. Caba,* 887 A.2d 370 (R.I.2005), applicant argues that the state failed to prove a crucial element: that applicant had the "present ability" to commit assault with a deadly weapon. However, this Court previously has decided that the evidence produced by the state at trial was, in fact, sufficient. *See Oliveira,* 774 A.2d at 918–19. Because of our prior decision, the doctrine of *res judicata* bars this Court from revisiting this particular issue. *See Carrozza,* 962 A.2d at 78; *Miguel,* 924 A.2d at 4.

### 6

### Due Process

■ The applicant's final claim of error is simply that the motion justice erred in failing to grant him a new trial based on a vaguely outlined theory of due process of law. As a basis for this assertion, he cites to the "synergy of circumstances and events" that have occurred throughout the proceedings, contending that, in their totality, they warrant a new trial. We likewise reject this due-process assertion because it amounts to nothing more than a reassertion of numerous allegations of error that this Court already has rejected. Hence, we conclude that the motion justice did not err in refusing to grant the applicant a new trial on this ground.

### Conclusion

For the reasons stated herein, we reverse the judgment of the Superior Court with respect to the grant of Ferrell's application for postconviction relief. With respect to the sentence-reduction motion, we remand this case to the Superior Court for a hearing before a different hearing justice to determine whether the applicant's sentence should be reduced. The record shall be remanded to the Superior Court.

Acting Chief Justice GOLDBERG did not participate.